1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

UNITED STATES,

          Applicant,

   v.

META PLATFORMS, INC.,

          Proposed Subpoenaed Party.

Case No. 23-mc-80249-PHK

**ORDER GRANTING *EX PARTE*
APPLICATION PURSUANT TO 28
U.S.C. § 1782 FOR AN ORDER
DIRECTING DISCOVERY IN AID OF
FOREIGN PROCEEDINGS**

Re: Dkt. No. 1

## INTRODUCTION

This matter is before the Court on the *ex parte* application of the United States ("USA") requesting an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for discovery on Meta Platforms, Inc. ("Meta").  [Dkt. 1].  Meta filed a response to the USA's application, stating that it "takes no position on the issuance of the subpoena, but it reserves all rights and objections with respect to the subpoena if it does issue."  [Dkt. 12 at 2].  The USA and Meta have both consented to Magistrate Judge jurisdiction in this matter.  [Dkts. 8, 11].  Having carefully reviewed the USA's application and all papers submitted in support thereof, as well as Meta's response to the application, the Court **GRANTS** the *ex parte* application on the terms and for the reasons set forth below.

## BACKGROUND

### A.    Procedural Background

On March 14, 2023, the National Court Administration of the Republic of Korea

(hereinafter, "the Korean Court") issued a Letter of Request under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555 ("Hague Evidence Convention"), requesting international judicial assistance to obtain certain evidence from Meta in connection with a civil action currently pending before the Seoul Central District Court No. 157 in Seoul, Republic of Korea, captioned *Jongmin Baek v. Unknown Defendant*, Foreign Reference Number 2023-F-1109.  [Dkt. 1-2 at 3-7].  In its Letter of Request, the Korean Court seeks any documents that Meta has regarding the following:

1. Information (names, dates of birth, e-mail addresses, and cell phone numbers) and the last 3 months' IP addresses about those subscribers whose Instagram accounts are "dr.jaylee_ju_mull_", "_the_battle_against_insta.gram", "ssam.ja.3333", "o_mark_n_rona_o", and "lavita_miruku.hime".

2. Whether there are other accounts created by the subscribers whose accounts are "dr.jaylee_ju_mull_", "_the_battle_against_insta.gram", "ssam.ja.3333", "o_mark_n_rona_o", and "lavita_miruku.hime".  If there is any, the name of the accounts and all information of the account(s).

[Dkt. 1-2 at 10].  The Letter of Request was sent to the United States Department of Justice's Office of International Judicial Assistance ("OIJA") in Washington, D.C., which serves as the USA's Central Authority for receiving letters of request under the Hague Evidence Convention. *Id.* at 2; *see* Yanbei Andrea Wang, *Exporting American Discovery*, 87 U. Chi. L. Rev. 2089, 2104 (2020) (discussing procedures for handling requests for international judicial assistance under the Hague Evidence Convention).  The Korean Court's request was then transmitted to the United States Attorney's Office for the Northern District of California, in accordance with 28 C.F.R. § 0.49(c).  [Dkt. 1-1 at 2].

On July 20, 2023, Assistant United States Attorney Benjamin J. Wolinsky ("AUSA Wolinsky"), on behalf of the USA, transmitted the Letter of Request to Meta's outside legal counsel, in an effort to obtain the information sought by the Korean Court voluntarily from Meta. [Dkt. 1-2 at 34-38].  Meta's outside legal counsel, in response, informed AUSA Wolinsky that they were "not authorized to accept service on Meta's behalf for this request."  [Dkt. 1-2 at 70].

Accordingly, to execute the Korean Court's request for international judicial assistance under the Hague Evidence Convention, the USA sought authority from this Court under 28 U.S.C. § 1782. [Dkt. 1-1 at 2].

### B.    The Foreign Proceeding

The underlying Korean case captioned *Jongmin Baek v. Unknown Defendant*, Foreign Reference Number 2023-F-1109, is a civil proceeding in which the plaintiff, Ms. Jongmin Baek, alleges that unknown defendant(s), "by means of his or her Instagram account, insulted the plaintiff publicly." [Dkt. 1-2 at 42]. The plaintiff claims "financial damage and mental distress due to the insult of the defendants." *Id.* From publicly available information and to put the request in context, it appears that the plaintiff in the underlying Korean lawsuit, Ms. Baek, promotes herself as a "fashion influencer" and "designer." *See, e.g.*, Live the Process, https://www.livetheprocess.com/blogs/physical/wash-out (last visited Dec. 5, 2023); Laverée, https://www.laveree.com/pages/our-story (last visited Dec. 5, 2023).

The Korean Court, on behalf of the plaintiff's attorney, requests information regarding the identity of the unknown defendant(s) from Meta, which operates Instagram. *See* Dkt. 1-3 at 5 ("Since the plaintiff is not aware of the defendants' identity for now and every piece of information to specify the identity of the defendants is being kept only by Meta Platforms, Inc., the order to submit the documents is required to specify the identity of the defendants."). The Letter of Request specifically seeks any information or documents that Meta has regarding the unknown defendants' names, dates of birth, email addresses, cell phone numbers, IP addresses, and Instagram accounts. *Id.* at 10. Meta requires a subpoena to provide the requested information. [Dkt. 1-1 at 2].

### C.    The § 1782 Application

The USA filed the instant § 1782 application on September 29, 2023. [Dkt. 1]. In the application, the USA asks the Court for an order appointing AUSA Wolinsky as Commissioner for

United States District Court
Northern District of California

the purpose of issuing a subpoena to Meta to execute the Letter of Request.  *Id.*  The USA

provided a copy of the proposed subpoena with its application.  [Dkt. 1-3 at 72-74].

On October 16, 2023, this Court issued an Order instructing the USA to serve a copy of its

application on Meta and setting a deadline for the Parties to consent or decline Magistrate Judge

jurisdiction in this matter.  [Dkt. 7].  On October 30, 2023, the Parties consented to Magistrate

Judge jurisdiction in this matter.  *See* Dkts. 8, 11; *see also In re CPC Patent Techs. Pty. Ltd. v.*

*Apple, Inc.*, 34 F.4th 801, 810 (9th Cir. 2022).  That same day, Meta filed a response to the USA's

application, stating that Meta "takes no position on the issuance of the subpoena, but it reserves all

rights and objections with respect to the subpoena if it does issue."  [Dkt. 12].

## LEGAL STANDARD

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to

provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v.*

*Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The statute reads, in pertinent part:

> The district court of the district in which a person resides or is found
> may order him to … produce a document or other thing for use in a
> proceeding in a foreign or international tribunal….  The order may be
> made pursuant to a letter rogatory issued, or request made, by a
> foreign or international tribunal or upon the application of any
> interested person and may direct that … the document or other thing
> be produced, before a person appointed by the court.  By virtue of his
> appointment, the person appointed has power to administer any
> necessary oath and take the testimony or statement.  The order may
> prescribe the practice and procedure, which may be in whole or part
> the practice and procedure of the foreign country or the international
> tribunal, for … producing the document or other thing.  To the extent
> that the order does not prescribe otherwise, … the document or other
> thing [shall be ] produced, in accordance with the Federal Rules of
> Civil Procedure.

28 U.S.C. § 1782(a).

"Section 1782's statutory language has been distilled to permit district courts to authorize

discovery where three general requirements are satisfied: (1) the person from whom the discovery

is sought 'resides or is found' in the district of the district court where the application is made; (2)

the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application

is made by a foreign or international tribunal or 'any interested person.'"  *Khrapunov v. Prosyankin*,

United States District Court
Northern District of California

931 F.3d 922, 925 (9th Cir. 2019) (citing 28 U.S.C. § 1782(a)).

Even where the statutory requirements are met, a district court retains discretion to determine what discovery, if any, should be permitted.  *Intel*, 542 U.S. at 264; *see Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) ("Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782.").  In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.

A district court's discretion is to be exercised in view of § 1782's twin aims: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts."  *Id.* at 252.  There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding.  *Id.* at 247, 261-63.  "Section 1782 is a provision for assistance to tribunals abroad.  It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here."  *Id.* at 263.

## DISCUSSION

The USA's § 1782 application here seeks an order appointing as Commissioner AUSA Wolinsky to serve upon Meta a subpoena for the written materials requested by the Korean Court in its Letter of Request under the Hague Evidence Convention.  The Court first considers whether it has the authority to issue the subpoena and then determines whether discretionary factors favor its issuance.

United States District Court
Northern District of California

**A.**     **The Court Has Authority to Grant the Requested Relief**

As a threshold matter, this Court has jurisdiction to hear and decide the § 1782 application because the USA and Meta have both consented to Magistrate Judge jurisdiction.  *See* 28 U.S.C. § 636(c); *CPC Pat. Techs.,* 34 F.4th at 808; *Williams v. King*, 875 F.3d 500, 500 (9th Cir. 2017).

The Court finds that the USA's application satisfies each of the threshold statutory requirements of § 1782.  The statute first requires that the person from whom discovery is sought "resides or is found" in the district of the district court where the application is made.  28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925.  "A business is 'found' where it is incorporated or headquartered." *In re Al-Baldawi*, No. 5:22-mc-80329-EJD, 2023 WL 3603731, at *2 (N.D. Cal. May 23, 2023) (quoting *Illumina Cambridge, Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO (TSH), 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020)).  Here, Meta's offices are headquartered in Menlo Park, California, which is located within the Northern District of California.  [Dkt. 1-2 at 5]; *see* bizfile Online, Cal. Sec'y of State, https://bizfileonline.sos.ca.gov/search/business (search for "Meta Platforms, Inc." or file no. 2711108) (last visited on November 22, 2023) (Meta's "principal address" in Menlo Park); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Minor v. FedEx Office & Print Servs.*, 78 F. Supp. 3d 1021, 1028 (N.D. Cal. 2015) (taking judicial notice of record of administrative agencies and publicly accessible websites).  Accordingly, the first statutory factor is satisfied.  *See In re Omori*, No. 5:23-mc-80195-EJD, 2023 WL 5957172, at *2 (N.D. Cal. Sept. 12, 2023) ("[T]he [§ 1782] Application satisfies the residence requirement because Meta is headquartered in and has its principal place of business in Menlo Park, California.").

The statute next requires that the discovery sought be "for use in a proceeding before a foreign tribunal."  28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925.  Here, the Korean Court seeks discovery for use in a civil action, *Jongmin Baek v. Unknown Defendants*, Foreign Reference Number 2023-F-1109, that is currently pending before Seoul Central District Court No. 157, in Seoul, Republic of Korea.  [Dkt. 1-2 at 4-8].  Thus, the second statutory factor is also met.

*See In re Request for Jud. Assistance from Seoul Cen. Dist. Ct.*, No. 23-mc-80016-BLF, 2023 WL 2394545, at *3 (N.D. Cal. Mar. 7, 2023) (finding the second statutory factor met where discovery was sought for use in "a civil proceeding in a foreign tribunal—the Seoul Central District Court").

Section 1782 finally requires that the discovery request be made by a foreign tribunal or interested party. 28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925. Here, there is a Letter of Request from the Korean Court, which is a foreign tribunal. [Dkt. 1-2 at 3-7]. Thus, the third statutory requirement is satisfied. *See In re Request for Int'l Jud. Assistance from the Nat'l Ct. Admin. of the Rep. of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (finding the third statutory requirement met where "the request was made by the National Court Administration of the Republic of Korea, a foreign tribunal").

Accordingly, the Court finds that it has the statutory authority to grant the relief sought by the USA in its § 1782 application. *Khrapunov*, 931 F.3d at 925.

### B. Discretionary Factors Weigh in Favor of Granting the USA's Application

The Court finds that each of the four discretionary factors from the *Intel* case supports the granting of the instant *ex parte* application.

The first discretionary factor requires the Court to consider whether the "person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 247. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding[,] . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at 264. This is because "[a] foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Id.* By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*; *see Salarzadeh v. Meta Platforms, Inc.*, No. 23-mc-80155-TSH, 2023 WL 4670287, at *3 (N.D. Cal. July 19, 2023) ("[T]he key issue is whether the material is obtainable through the foreign proceeding."). "Consequently, the first discretionary factor 'favors discovery against nonparticipants in foreign proceedings.'" *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 910 (N.D. Cal. 2022) (quoting *In re Anahara*, No. 22-mc-80063,

United States District Court
Northern District of California

1  2022 WL 783896, at *2 (N.D. Cal. Mar. 15, 2022)).

2        Here, Meta is not a party to the proceedings in Korea.  [Dkt. 1-1 at 6].  Accordingly, this

3  factor weighs in favor of granting the USA's application.  *See In re TPK Touch Sols. (Xiamen)*

4  *Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *3 (N.D. Cal. Nov. 17, 2016) (finding the

5  first discretionary factor to weigh in favor of granting the § 1782 application where the proposed

6  subpoenaed party, HTC, was not a party to the foreign proceedings in China).

7        The second discretionary factor requires the Court to consider "the nature of the foreign

8  tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

9  government or the court or agency abroad to U.S. federal court judicial assistance."  *Intel*, 542

10  U.S. at 264.  This factor "focuses on whether the foreign tribunal is willing to consider the

11  information sought."  *In re Will Co.*, No. 21-mc-80211-JCS, 2021 WL 5322653, at *3 (N.D. Cal.

12  Nov. 16, 2021) (quoting *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL

13  1161568, at *4 (N.D. Cal. Mar. 14, 2016)).  "Where there is no evidence suggesting that foreign

14  courts would be unreceptive to the requested discovery, the second discretionary factor weighs in

15  favor of the application."  *Id.* (citing *In re Med. Corp. H&S*, No. 19-mc-80107-SVK, 2019 WL

16  2299953, at *3 (N.D. Cal. May 30, 2019)).

17        In this case, the foreign tribunal is clearly receptive to judicial assistance, as the Letter of

18  Request was submitted on by the Korean Court itself in support of its own proceedings.  [Dkt. 1-2

19  at 2].  Therefore, the second discretionary factor weighs in favor of granting the USA's

20  application.  *See In re Request for Int'l Jud. Assistance from 19th Civil Ct. of First Instance*

21  *Istanbul, Turkey*, No. 22-mc-80279-JSC, 2023 WL 420787, at *3 (N.D. Cal. Jan. 26, 2023)

22  ("[T]hat a Turkish court requests the information indicates it is receptive to assistance [under

23  § 1782].").

24        The third discretionary factor requires the Court to consider whether the request "conceals

25  an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country

26  or the United States."  *Intel*, 542 U.S. at 265.  Here, the fact that the discovery request was

27  initiated by the Korean Court (rather than a private litigant) strongly suggests that the request is

28  not an attempt to circumvent the Republic of Korea's proof-gathering restrictions.  *See In re Letter*

United States District Court
Northern District of California

*Rogatory—Request for Int'l Jud. Assistance from the Harju Country Ct. in Est. Petition of Lyoness Eesi OÜ*, No. 17-mc-80044-MEJ, 2017 WL 1436096, at *3 (N.D. Cal. Apr. 24, 2017) ("Where a foreign court has requested the information there is a presumption that the application is not an attempt to circumvent foreign proof-gathering procedure.") (collecting cases).  The Court finds nothing within the record suggesting that the instant *ex parte* application is an attempt to bypass proper proof-gathering procedures or any other policies of the Republic of Korea.  *Intel*, 542 U.S. at 264-65; *see In re Anahara*, No. 22-mc-80063-JCS, 2022 WL 783896 (N.D. Cal. Mar. 15, 2022) ("Absence of evidence of attempted circumvention weighs in favor of an application.").

In its evaluation of the third discretionary factor, the Court also must consider the extent to which the application conceals an attempt to circumvent any policies of the United States.  *Intel*, 542 U.S. at 265.  The Court notes that the instant application seeks to unmask an anonymous online speaker and subject them to legal action for their speech.  At least two courts within this District have suggested that such requests may raise First Amendment concerns.  *See In re Planning & Devel. of Educ., Inc.*, No. 21-mc-80242-JCS, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022) (positing that the third discretionary factor "may [] weigh against granting an application that conceals an attempt to contravene the First Amendment's purpose without justification[,]" and noting that "[e]ven where the speakers appear to be foreign citizens outside U.S. territory who do not possess rights under the U.S. Constitution, the principles underlying the First Amendment may counsel a court of the United States against exercising its discretion to aid in punishing speech that would be protected in this country"); *In re Tagami*, No. 21-mc-80153-JCS, 2021 WL 5322711, at *3 n.1 (N.D. Cal. Nov. 16, 2021) (same).

United States citizens, whether inside or outside of United States territory, possess First Amendment rights.  *In re Takada*, No. 22-mc-80221-VKD, 2023 WL 1442844, at *3 (N.D. Cal. Feb. 1, 2023) (citing *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013)).  Foreign citizens who are outside United States territory, by contrast, do not possess any rights under the United States Constitution, including under the First Amendment.  *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022) (quoting *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020)).  The Court finds persuasive

several recent opinions issued by courts in this District, concluding that where the record does not indicate that anonymous speakers are entitled to First Amendment protections, U.S. free-speech principles should not factor into a federal district court's evaluation of a § 1782 application. *See hey, Inc. v. Twitter, Inc.*, No. 22-mc-80035-DMR, 2023 WL 3874022, at *7-8 (N.D. Cal. June 6, 2023) (denying a motion to quash a subpoena issued under § 1782 seeking the identity of anonymous speaker, where there was no evidence indicating that the speaker was entitled to First Amendment protections); *Takagi v. Twitter, Inc.*, No. 22-mc-80240-VKD, 2023 WL 1442893, at *4 (N.D. Cal. Feb. 1, 2023) ("Simply assuming First Amendment protection applies, in the absence of any facts or circumstances suggesting that it does, is inconsistent with *Intel*'s caution against evaluating an anticipated foreign proceeding through the lens of the nearest domestic analog.").

The Court is cognizant that the First Amendment is reflective of a general public policy of the United States in favor of freedom of speech worldwide, and given the borderless nature of the Internet, there exists at least the potential that such public policy could be implicated in a case involving online speech. *See Internet Freedom and Technology and Human Rights*, U.S. Dep't of State, https://www.state.gov/internet-freedom-and-technology-and-human-rights/ (last visited Dec. 5, 2023) ("Just as people must be able to exercise their rights to freedoms of expression, association, religion or belief, and peaceful assembly offline, they must also be able to exercise these same rights online."); *see also* American Convention on Human Rights "Pact of San Jose, Costa Rica (B-32)," Nov. 22, 1969, O.A.S.T.S. No. 36, Art. 13, available at https://www.oas.org/dil/treaties_B-32_American_Convention_on_Human_Rights.htm (last visited Dec. 5, 2023) ("Everyone has the right to freedom of thought and expression. This right includes freedom to seek, receive, and impart information and ideas of all kinds, regardless of frontiers, either orally, in writing, in print, in the form of art, or through any other medium of one's choice."); American Convention on Human Rights, General Information of the Treaty: B-32, available at https://www.oas.org/dil/treaties_B-32_American_Convention_on_Human_Rights_sign.htm (last visited Dec. 5, 2023) (United States signatory as of June 1, 1977).

United States District Court
Northern District of California

In this case, however, there is nothing in the present record indicating the unidentified defendant(s) in the underlying Korean civil action are entitled to First Amendment protections. Nor is there evidence suggesting that issuance of the subpoena (and Meta's compliance with the subpoena) would lead to a violation of either U.S. public policy or fundamental human rights. *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 572 (9th Cir. 2011) ("We can conceive of situations in which the Constitution might require the district court to deny a request for assistance. For example, if credible evidence demonstrated that compliance with a subpoena would lead to an egregious violation of human rights, such as torture, then the Constitution may require the courts to deny assistance."). Accordingly, without prejudice to any argument that might be raised in a motion to quash or modify the subpoena, the Court finds that, on the current record, the public policies related to the First Amendment (or any other public policies of the United States) do not warrant denial of the USA's application, particularly in light of the other discretionary factors here. The Court thus concludes that the third discretionary factor does not weigh against the requested discovery. *See Tagami*, 2021 WL 5322711, at *3 (finding the third discretionary factor to weigh in favor of discovery where the requested discovery was limited to records for identification purposes and there was no evidence that the applicant was attempting to circumvent foreign discovery rules or any policy of the United States).

The fourth discretionary factor requires the Court to consider whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (citing *In re Application of O2CNI Co.*, No. C 13-80125 CRB (LB), 2013 WL 5826730, at *15-16 (N.D. Cal. Oct. 29, 2013)). "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *Varian Med. Sys.*, 2016 WL 1161568, at *5 (citing *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994)). "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

United States District Court
Northern District of California

1    Where, as here, a § 1782 application seeks discovery to identify an anonymous speaker,

2    the fourth discretionary factor also considers, where applicable, the First Amendment's free

3    speech guarantees and the potential chilling effect that granting the request would have on

4    anonymous speech. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021

5    WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021). "As with other forms of expression, the ability to

6    speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals

7    to express themselves freely without 'fear of economic or official retaliation . . . [or] concern

8    about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)

9    (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)).

10    The Court finds that the fourth discretionary factor also weighs in favor of granting the

11    instant *ex parte* application. The proposed subpoena to Meta seeks documents showing the

12    names, dates of birth, email addresses, telephone numbers, and "the last three months' IP

13    addresses" associated with five Instagram accounts, as well as "all [of] the information" for any

14    other Instagram accounts associated with the five Instagram accounts at issue. The Korean Court

15    seeks this information to establish the identity of the defendant(s) named in the civil action

16    pending before the Seoul Central District Court No. 157 in Seoul, Republic of Korea, captioned

17    *Jongmin Baek v. Unknown Defendants*, Foreign Reference Number 2023-F-1109. The discovery

18    sought from Meta is necessary for resolving the issues at stake in the Korean case. [Dkt. 1-3 at

19    10].

20    As already discussed, there is nothing in the present record indicating that the anonymous

21    speakers are entitled to First Amendment protections. On its face, the proposed subpoena

22    appropriately does not seek the contents of any communications associated with the accounts at

23    issue. *See, e.g.*, *In re Path Network, Inc. & Tempest Hosting, LLC*, --- F. Supp. 3d ----, 2023 WL

24    8115045, at *10-11 (N.D. Cal. 2023) (discussing prohibitions of the Stored Communications Act,

25    18 U.S.C. §§ 2701 *et seq.*). Rather, the scope of the proposed discovery is sufficiently confined to

26    the names, birth dates, telephone numbers, email addresses, and IP addresses for the individual(s)

27    who controlled five specific Instagram accounts. *See London v. Does 1-4*, 279 F. App'x 513, 514-

28    15 (9th Cir. 2008) (holding request for names, addresses, telephone numbers, and IP addresses

associated with five email accounts was "not unduly intrusive or burdensome because it seeks to gather only identifying information for the accounts . . . and not the content of any communications"); *In re Starship Ent. Co.*, No. 23-mc-80147-BLF, 2023 WL 5520772, at *1, 3 (N.D. Cal. Aug. 25, 2023) (authorizing discovery of information necessary to identify anonymous Google account holder(s), including names, addresses, email addresses, telephone numbers, dates of birth, and banking information).  The proposed subpoena's request for identical information as to any other Instagram accounts associated with the five Instagram accounts at issue is not, on its face, unduly intrusive or burdensome.  *See, e.g.*, *In re Med. Corp. Seishinkai*, No. 21-mc-80160-SVK, 2021 WL 3514072, at *5 (N.D. Cal. Aug. 10, 2021) (authorizing discovery of "information about other Google accounts associated with the accounts at issue").

The proposed subpoena requests "the last three months' IP addresses" but does not specify a time period for the other categories of information sought.  [Dkt. 1-3 at 73-74].  To the extent that the proposed subpoena asks for information without time constraints, the request is overly broad.  *See Rainsy v. Facebook*, 311 F. Supp. 3d 1101, 1113 (N.D. Cal. 2018) (holding request for documents with no specified time limit to be overly broad and unduly burdensome); *Qualcomm Inc.*, 162 F. Supp. 3d at 1044 (denying § 1782 application where request for documents was "not narrowly tailored temporally, geographically or in their subject matter").  The USA's request for documents from Meta must be limited to a period of time reasonably calculated to identify who controlled the five Instagram accounts when the statements at issue in the South Korean case were created.  *See, e.g.*, *United States v. Google LLC*, --- F. Supp. 3d ----, 2023 WL 5725518, at *9 (N.D. Cal. 2023) ("[T]he scope of discovery is sufficiently confined to the name, gender, phone number, and date of birth, for the individual(s) who used a specific Google email account during a specific date range."); *Salarzadeh*, 2023 WL 4670287, at *5 ("Salarzadeh's discovery does not appear to be burdensome because he seeks names, addresses, telephone numbers, email addresses, and IP addresses associated with the account, from July 25, 2022 until the account was deleted or removed.").

Accordingly, the Court finds that all four discretionary factors weigh in favor of granting the instant *ex parte* application, subject to a narrowing of the time frame for the requested

information.  The fact that Meta does not oppose the relief sought by the USA in its application (subject to reservation of rights to object to the underlying subpoena) further supports the exercise of discretion to grant the application.

### C.     The Appointment of a Commissioner

Whether or not to grant the USA's *ex parte* application does not end this Court's inquiry. The Court next addresses the USA's request to appoint AUSA Wolinsky as Commissioner for purposes of issuing the subpoena for the authorized discovery.

An order authorizing discovery under § 1782 "may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."  28 U.S.C. § 1782(a).  While the statute as currently written does not use the term "Commissioner," the Court understands the USA's application to be requesting appointment of a "person" (as that term is used in the statute) before whom or to whom the documents shall be produced in response to the subpoena.  *See Google*, --- F. Supp. 3d ----, 2023 WL 5725518, at *10-12 (recounting the history of the § 1782 statute and how the term "Commissioner" was previously used in the statutory scheme for international discovery).

The Court has wide discretion under the § 1782 statute to determine whether to appoint a Commissioner to receive evidence sought for use in a foreign proceeding, as well as who to appoint as Commissioner for such purpose.  Where, as here, the request for discovery is made on behalf of a foreign tribunal in a civil law country under the Hague Convention, it is common practice to appoint an Assistant United States Attorney as commissioner.  *See, e.g.*, *In re Request for Int'l Judicial Assistance From the 19th Civil Ct. of First Instance Istanbul, Turkey*, No. 22-mc-80279-JSC, 2023 WL 420787, at *3 (N.D. Cal. Jan. 26, 2023) ("Courts in this district, and others within the Ninth Circuit, have appointed AUSAs as Commissioners and authorized them to obtain requested discovery.") (collecting cases).

The "person" appointed as Commissioner under § 1782 should have the following minimum qualifications: sufficient skills, background, and/or experience to provide reasonable assurance to the Court that such person would competently understand and carry out the process of administering oaths and taking testimony; sufficient skills, background, and/or experience to

14

provide reasonable assurance to the Court that such person would competently understand and carry out the receipt of evidence in compliance with the relevant processes for document production; and sufficient skills, background, and/or experience to carry out such duties objectively and impartially, including being free from a relationship with the parties, attorneys, action, or court that would require disqualification if that person were a federal judge. *Google*, --- F. Supp. 3d ----, 2023 WL 5725518, at *10. Such person should *ideally* have the following qualifications: the absence of any substantial criminal record or history of sanctions or other such discipline which might call into question that person's reliability or suitability for the appointment; at least some prior experience as a commissioner or other neutral officer of a court or any other relevant judicial experience; and the temperament, reputation, and good moral character making such person suitable for appointment. *Id.*

Applying these factors here, the USA requests that AUSA Wolinsky be appointed as Commissioner for purposes of the proposed subpoena. [Dkt. 1]. AUSA Wolinsky is not counsel in the underlying South Korean litigation, has no apparent interest in the outcome of the underlying litigation or the information sought, appears to lack any motive to misuse the evidence sought, is a licensed attorney and member of the bar of this Court with good standing, and has significant experience litigating actions on behalf of the federal government in this District. Considering the totality of these circumstances, the Court concludes that AUSA Wolinsky is an appropriate "person" to serve as Commissioner for purposes of the requested subpoena.

Having determined that AUSA Wolinsky should be appointed as Commissioner, the Court next addresses the scope of the appointed Commissioner's authority. The USA's application does not seek authority beyond the requested subpoena. Thus, the Commissioner is authorized to follow up with Meta on the requested subpoena, take all necessary steps to enforce or negotiate attempts to resolve disputes regarding the subpoena (or respond to/oppose any motion to quash or modify), receive the documents and information produced in response to the subpoena (including verification from Meta), send the documents and/or materials obtained from Meta to the OIJA for transmission to the Korean Court (along with any additional verifications from the Commissioner which the Korean Court may request), and of course, communicate with Meta, the relevant

account holder(s), this Court, and the Korean Court on the progress of the subpoena.  The

Commissioner is further authorized to file any subsequent or supplemental requests to authorize

issuance of any supplemental or additional subpoenas which the Korean Court may request.  The

Commissioner may, if necessary, file a motion with this Court to seek authorization for any

additional powers or other discovery under § 1782 relating to the underlying South Korean case.

Beyond the reasonable scope so authorized, the Commissioner's scope of authority is limited to

the above—in particular, the Commissioner is *not* authorized to disclose or share the

documents/information produced by Meta to any third parties unrelated to this matter.

### D.    The Proposed Subpoena

Under § 1782, the Court has discretion to "prescribe the practice and procedure . . . for

taking the testimony or statement or producing the document or other thing."  28 U.S.C. § 1782(a).

The practice or procedure "may be in whole or part the practice and procedure of the foreign

country or the international tribunal."  *Id.*  Unless otherwise ordered by the Court, "the testimony

or statement shall be taken, and the document or other thing produced, in accordance with the

Federal Rules of Civil Procedure."  *Id.*  In exercising its authority, the Court must also properly

exercise its discretion in crafting the terms of the discovery being authorized.

Here, the USA's application seeks the issuance of a subpoena for certain "document[s] or

information."  [Dkt. 1-3 at 74].  Accordingly, the Court determines that the discovery authorized

herein shall be taken and produced in accordance with the requirements and procedures for

production of documents under the Federal Rules of Civil Procedure, and in particular, Rules 26

and 45.  Under Rule 26(a)(1), discovery must be "proportional to the needs of the case,

considering the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit."

Rule 45 requires a subpoena to "command each person to whom it is directed" to produce

documents "at a specified time and place."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  The place of

compliance for production of documents must be "within 100 miles of where the [subpoenaed]

United States District Court
Northern District of California

1   person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P.

2   45(c)(2)(A).   "Although Rule 45(a)(1)(A)(iii) permits the subpoena to direct a place of

3   compliance, that place must be selected under Rule 45(c)."  Fed. R. Civ. P. 45 advisory

4   committee's note to 2013 amendment, subsection (c).

5          The USA's proposed subpoena directs Meta to "produce the evidence by email to [AUSA

6   Wolinsky] at benjamin.wolinsky@usdoj.gov or by mail at [450 Golden Gate Avenue, Box 36055,

7   San Francisco, California 94102-3495] no later than October 10, 2023."  [Dkt. 1-3 at 74].  The

8   USA's application states that "[u]pon receipt, the documents will be sent to the Department of

9   Justice, Civil Division, Office of International Judicial Assistance for transmission to the Seol [sic]

10  Central District Court No. 157 in Korea." [Dkt. 1-1 at 7].  The Court finds that the proposed

11  subpoena complies with the geographic limitation requirements of Rule 45.  *See Google*, --- F.

12  Supp. 3d ----, 2023 WL 5725518, at *20 (authorizing issuance of a subpoena requiring identical

13  method for production).

14         The Court notes that the proposed subpoena's compliance date (October 10, 2023) has

15  already lapsed.  Under Rule 45, any objection to a subpoena "must be served before the earlier of

16  the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P.

17  45(d)(2)(B).  Without setting a bright line rule for the compliance date, Rule 45 requires that a

18  person commanded to produce documents be given "reasonable time to comply" with the

19  subpoena.  Fed. R. Civ. P. 45(d)(3)(A)(i) ("On timely motion, the court . . . must quash or modify

20  a subpoena that . . . fails to allow a reasonable time to comply[.]").   Because each subpoena will

21  necessarily differ in scope and breadth, and each case is dependent on the facts specific to that

22  case, Rule 45 does not define numerically what length of time is reasonable.  Rather,

23  "reasonableness seems to be related to the extent of the materials requested and the other

24  underlying circumstances of the particular case."  9A CHARLES ALAN WRIGHT & ARTHUR R.

25  MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3rd ed. 2023).  The Court has

26  considerable flexibility to determine what constitutes a "reasonable" compliance date.  *Id.*

27         In its response to the USA's application, Meta asks for a Court order permitting it to

28  provide notice to the relevant account holder(s) within ten calendar days of service of the

subpoena and this Order.  [Dkt. 12 at 2].  Meta also asks that "Meta and/or the account holder(s)" be given twenty-one days from the date of the notice to file a motion contesting the subpoena." *Id.* at 3.  Given that the subpoena requests personally identifying information from an otherwise anonymous speaker (or speakers), the Court finds it appropriate to allow Meta to provide notice of the subpoena to the account holder(s).  The United States has not opposed or objected to Meta's request for time to provide notice to the account holder(s).  The Court also finds that the further 21-day compliance period requested by Meta is reasonable in this case, and the United States has not opposed or otherwise objected to Meta's request.

As discussed above, while the Court finds that all four discretionary factors weigh in favor of issuance of a subpoena, the proposed subpoena has no time limits for the information sought and thus should be subject to a narrowing of the time frame for the requested information.  Otherwise, a temporally unbounded subpoena is not proportional to the needs of the case.  Fed. R. Civ. P. 26(a)(1).  From public information, it appears that the company run by the plaintiff in the Korean case, Ms. Baek, was started in approximately in early 2022.  *See* Lavarée, https://laveree.co.kr/article/magazine/8/101/ (last visited Dec. 5, 2023).  Accordingly, the USA is **ORDERED** to modify the requested subpoena to limit the time period for the requested information from January 1, 2022 until the date of response to the subpoena by Meta.

As already noted, Meta takes no position on the issuance of the USA's proposed subpoena, but it reserves the right to object to the subpoena on certain grounds.  [Dkt. 12 at 2].  Whether or not there is any dispute or issue with regards to the merits of the subpoena is not before the Court at this time.  The Court's determination regarding whether to authorize service of the proposed subpoena at this stage does not foreclose a motion to quash or modify the subpoena following service or by the account holder(s) whose identifying information is sought.

## **CONCLUSION**

Having considered all relevant factors and legal requirements, the Court finds that, in its discretion, granting the USA's § 1782 application is appropriate in this case.

Accordingly, **IT IS ORDERED THAT**:

1. The USA's application [Dkt. 1] is **GRANTED without prejudice** as to any argument or

United States District Court
Northern District of California

objection that may be asserted in a motion to quash or modify the subpoena by Meta or any of the account holder(s) at issue.

2.  The Court **ORDERS** the appointment of AUSA Wolinsky as a "person" authorized under § 1782 (or "Commissioner") for purposes of issuing the subpoena consistent with and with authority as set forth and limited herein.

3.  The Commissioner is authorized to serve upon Meta a subpoena substantially in the form annexed as Exhibit D to the USA's application [Dkt. 1-3 at 73-74], as modified by the Court herein.  Said subpoena shall comply with the requirements set forth in Federal Rule of Civil Procedure 45, including the geographic limits on location for production of documents in response thereto, the time limitations for the requested information discussed herein, and all other conditions as set forth herein.  Service of that subpoena shall be completed with **ten (10) calendar days** of this Order.  When serving the subpoena, the Commissioner shall attach to the subpoena a copy of this Order.

4.  Within **ten (10) calendar days** from the date of service of the subpoena, Meta shall give notice of the subpoena and provide a copy of the subpoena (and further including a copy of this Order) to the relevant account holder(s) whose information is sought, using the contact information for such person(s) that is in Meta's possession.  As part of that notice, Meta shall advise the account holder(s) that Meta will produce information responsive to the subpoena unless such relevant account holder(s) timely serve and file an objection to the subpoena (or a motion to quash or modify the subpoena) in this Court.  Meta shall advise the relevant account holder(s) that their deadline to timely object to the subpoena (or to file a motion to quash or modify the subpoena) shall be within **twenty-one (21) calendar days** of the date Meta sends them the notice and a copy of the subpoena as required herein.

5.  Meta shall have **twenty-one (21) days** from the date of service of the subpoena to serve on the Commissioner written objections (if any) and response to the subpoena.  Meta shall have **thirty-one (31) days** from the date of service of the subpoena to bring a motion to quash or modify the subpoena, or to raise any other objections that require adjudication, in this Court using the procedures discussed below.

United States District Court
Northern District of California

6. If Meta asserts objections to the subpoena, the Parties shall promptly meet and confer to attempt to resolve those objections.  With regard to any such dispute concerning the subpoena, should one arise, counsel for the USA and Meta shall review, be familiar with, and follow this Court's procedures for resolving discovery disputes as set forth in the undersigned's Standing Order for Discovery available on the Northern District of California's website.  All briefing and hearing on any such motion shall be governed by the Court's Standing Order for Discovery, particularly Section H regarding discovery disputes, except to the extent modified herein.  If a motion (whether styled as a motion to compel, a motion to quash/modify, or otherwise) is required to adjudicate any remaining disputes between the Parties, any such motion shall be filed by joint letter brief no later than **thirty-one (31) calendar days** from the date of service of the subpoena.  The filing of any motion shall not be relied upon as a basis to delay or refuse otherwise unobjected production of documents.

7. If, after notice is provided and after the deadlines set forth herein have lapsed, neither the relevant account holder(s) nor Meta files a motion to quash or modify the subpoena (or otherwise raises objections with the Court that require adjudication), Meta shall produce the requested documents and information, along with a notarized verification signed under penalty of perjury, to the Commissioner by email at benjamin.wolinsky@usdoj.gov and by certified U.S. mail to the following address:

Benjamin J. Wolinsky
U.S. Attorney's Office
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102-3495

8. Contemporaneously with its production to the USA, Meta shall send to the relevant account holder(s) a copy set of all documents and information produced pursuant to the subpoena issued in this matter, using the same contact information for such person(s) as was used to provide such person(s) notice of the subpoena.

9. Upon receipt of the documents and information produced by Meta, AUSA Wolinsky as Commissioner shall promptly send those materials, together with Meta's notarized

United States District Court
Northern District of California

1   verification and any additional verification from the Commissioner which the Korean

2   Court may require (including, if needed, a copy of this Order), to the United States

3   Department of Justice's Office of International Judicial Assistance ("OIJA") in

4   Washington, D.C. which shall then transmit all such materials to the Korean Court.

5   10. Within **thirty (30) calendar days** after the Commissioner has sent the materials to the

6   OIJA, the Parties shall file with the Court a Joint Status Report, advising as to the

7   completion of production in this matter and whether any further issues relating to the

8   subpoena remain pending.

9

10   **IT IS SO ORDERED.**

11

12   Dated:  December 5, 2023

13   _____

14   PETER H. KANG
     United States Magistrate Judge